CRENSHAW OIL COMPANY v. HENRY M. JOHNSON, TAX COLLECTOR.

[48 South. 5.]

PRIVILEGE TAXES. *Oil mills. Basis of taxation. Capital. Code 1906,* § 3801.

The "capital" on which privilege taxes on cotton seed oil mills are based, under Code 1906, § 3801, imposing such taxes, is the property invested and used in the business, not necessarily the corporate stock.

FROM the circuit court of, first district, Panola county.

HON. WILLIAM A. ROANE, Judge.

Johnson, tax collector, appellant, was plaintiff in the court below; the oil mill company, appellee, was defendant there. From a judgment in plaintiff's favor for the full sum demanded the defendant appealed to the supreme court.

The facts are stated in the opinion of the court.

*Shands & Montgomery* and *Alexander & Alexander,* for appellant.

The value of the gin property should not be taken into consideration in determining the amount of the capital of appellant for the purpose of deciding this issue. *Senatobia Oil Co. v. Poag,* 86 Miss. 457.

It is true that the capital stock of this company, and that

part of the capital stock used in carrying on the oil mill business proper, originally exceeded $30,000; but this tax is not laid on capital stock of a company, but is a tax laid on its capital as distinguished from capital stock. *Hazlehurst Oil Co. v. Decell,* 83 Miss. 346, 33 South. 412.

Thus far this case is settled favorably for appellant by the decisions of this court, but our court has nowhere defined what is meant by the "capital" of a corporation.

In Helliwell on Stock and Stockholders, § 3, p. 3, the author states the true distinction between capital stock and capital when he says:

"The capital stock is the fund, in the form of money or its equivalent, paid in or pledged to the corporation by the shareholders as the financial basis of its business, while the capital of a corporation consists of its money, securities, and such other property as it may chance to possess, from whatever source derived. It will be seen, therefore, that the amount of the capital stock and the amount of capital may vary widely. Assuming that the capital stock has been placed at par, where the corporation has had no losses and no gains, or where profits have been made and distributed in full to the shareholders in the form of dividends, the capital stock and capital will be equal in amount. Where there have been losses the amount thereof if not recouped will represent the excess of the nominal capital stock over the capital. The amount of the capital stock of a corporation is usually determined by its charter, and as stated elsewhere, can be increased or diminished only by due process of law. Its real value, however, will depend in part on the profits and losses of the corporation, past and prospective, and in part upon the amount of the accumulated profits, if any, which are reserved as an additional basis for profit making."

To the same effect see *Bank v. Assessors* (La.), 18 South. 753.

In *Christenson v. Eno,* 106 N. Y. 97, 60 Am. Rep. 429, the court says in its opinion at the bottom of page 430: "The cap-

ital of a corporation consists of its funds, securities, credits
and property of whatever kind which it possesses." See also
*People v. New York Tax Commissioner,* 23 N. Y. 194; *Weath-
erly v. Baker,* 35 N. J. Eq. 501; *Wells v. Canal Co.,* 64 N. W.
72; *Union Trust Co. v. Coleman,* 12 L. R. A. 762; *Foster v.
Stephens,* 13 L. R. A. 166.

As said by Chief Justice WHITFIELD in the case of *Hazle-
hurst Oil Co. v. Decell, supra:* "If, in assessing the capital stock
of a corporation, the tax is assessed on the market value of the
corporation and not the amount paid in, how can it be that the
privilege tax shall be held to be based on the capital stock paid
in and not on the capital where the larger word capital is
used ?"

*J. B. Stirling,* attorney-general, for appellee.

This record utterly fails to show that the value of the oil mill
plant is below $30,000. The only way this could have been
shown would have been by the introduction of testimony to
show the market value of the plant, and if there were no demand
for oil mills in the market, then by showing that by reason of
depreciation of the oil mill building its real estate and machin-
ery, the value had fallen below $30,000.

The fact that a corporation is not paying a dividend is not a
circumstance of much value in determing the value of the plant.
If so, railroads and other corporations would invariably escape
taxation either *ad valorem* or privilege.

Under the theory advanced by appellant an oil mill unques-
tionably worth $50,000, but upon which $50,000 had been bor-
rowed and improvidently spent by its officers would not be sub-
jected to taxation, for its stock would thus be rendered value-
less. The property of corporations is assumed to be worth
what is put into them, unless by time or use the assets are de-
preciated, and if this is depended upon to show depreciation it
must be shown clearly and unequivocally, and bring the value
below the stipulated amount.

HARPER,* Special Judge, delivered the opinion of the court.

The Crenshaw Oil Company operates an oil mill. Its capital stock exceeds $30,000, which amount it invested in the oil mill business. But for some reason the company did not succeed, and the value of its capital stock greatly depreciated. In the fall of 1907 the sheriff of Panola county sued the oil mill company for $350 for failure to pay the privilege license of $175, assessed by Code of 1906, § 3801: "On each cotton seed oil mill, where the capital exceeds thirty thousand dollars, and less than seventy-five thousand dollars, $175." The case was submitted to the judge in lieu of a jury, who according to the special bill of exceptions found as follows: "The evidence shows that the amount originally invested in the oil mill business by plaintiff company exceeded $30,000. The evidence, which was undisputed, further showed that the aggregate value of all the property, real, personal, and mixed, of said company, now engaged in the oil mill business and so engaged on the 1st day of May, 1907, was $21,000. In this state of facts the court held the plaintiff liable to the privilege tax, holding that the amount of money originally invested in the business is what is meant by the word 'capital,' and not what was the fair market value of the property at the taxing period, and held that the capital was not affected by depreciation of value of the property which represents the original investment"—and accordingly rendered a judgment against the oil mill company for $350.

We are of the opinion that the measure of the liability of the appellant is the value of the assets used and invested in the business during May of the year in which the tax is collected, and not the value of the assets originally used and invested in the business. We think this question is virtually settled by the case of *Hazelhurst Oil Company v. Decell,* 83 Miss. 346, 33

---

* One of the judges of the court having recused himself in this case, William R. Harper, Esq., a member of the supreme court bar was appointed and presided in his place.

South. 412. Under the language of this statute we do not think that the value of the capital stock is material or relevant; but it is the value of the capital, or property, or assets invested and used in the business, as distinguished from the capital stock.

The judgment of the court below is reversed, and the cause remanded, to be proceeded with in accordance with this opinion.

*Reversed.*